No. 91-168

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

IN THE MATTER OF A.N.S., L.M.R.,

Youths in Need of Care.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
               In and for the County of Yellowstone,
               The Honorable Maurice R. Colberg, Jr., Judge
               presiding.


COUNSEL OF RECORD:

        For Appellant:

        James A. Patten, Patten Law Firm, Billings, Montana.

        For Respondents:

        Hon. Marc Racicot, Attorney General, Helena,
        Montana:   Cregg W. Coughlin, Assistant Attorney
        General, Helena, Montana:   Dennis Paxinos, County
        Attorney, Billings, Montana:   Susan Dunn, Deputy
        County Attorney, Billings, Montana;   Damon L.
        Gannett, Attorney at Law, Billings, Montana;   D.
        Michael Eakin, Attorney at Law, Billings, Montana.


                    Submitted on Briefs:   February 13, 1992

                          Decided:   March 24, 1992

Filed:

Chief Justice J. A. Turnage delivered the Opinion of the Court.

M.M. (Mother) appeals the findings of fact, conclusions of law and judgment of the Thirteenth Judicial District, Yellowstone County, terminating her parental rights to her children, A.N.S. and L.M.R. We affirm.

We rephrase the issues presented on appeal as follows:

1. Did the District Court lack jurisdiction to terminate Mother's parental rights?

2. Did the District Court abuse its discretion in denying Mother's motion to dismiss?

3. Were the District Court's findings of fact, conclusions of law, and the judgment supported by substantial credible evidence?

Mother is the natural mother of three children: L.M., born October 29, 1983; A.N.S., born November 19, 1987; and L.M.R., born March 16, 1989. The natural father of L.M. is unknown. L.S. is the natural father of A.N.S. and is incarcerated at Montana State Prison. M.R. is the natural father of L.M.R.

Mother suffers from a chronic schizophrenia, undifferentiated type, and a borderline personality disorder. Her mental illness causes her to suffer paranoia and active hallucinations. On August 19, 1985, the District Court terminated Mother's parental rights to L.M. after finding 1) L.M. to be a youth in need of care under § 41-3-102, MCA, 2) Mother incapable of adhering to any proposed treatment plan, and 3) Mother unfit and unable to provide adequate parental care to L.M. with her conduct and condition unlikely to

2

change in a reasonable amount of time. In the Matter of L.M., Thirteenth Judicial District Court, Yellowstone County, Cause No. DJ-85-007 (1985).

A.N.S. and L.M.R. have been under protective custody of Montana Department of Family Services since their births. A.N.S. was placed in foster care and L.M.R. was placed with his father, M.R. Besides periodic visits, A.N.S. has never been in Mother's custody. L.M.R has never lived with Mother.

From 1984 to 1989, Department of Family Services and other agencies attempted to assist Mother in developing parenting skills with minimal success. Mother's conduct and condition continued to render her unable to provide adequate parenting skills.

On May 24, 1989, a deputy county attorney, on behalf of Montana Department of Family Services, petitioned the District Court for permanent legal custody and termination of Mother's parental rights to A.N.S. and temporary legal custody and termination of mother's parental rights to L.M.R. On July 10, 1990, the District Court terminated Mother's rights to A.N.S. and L.M.R. From this order, Mother appeals.

1. Did the District Court lack jurisdiction to terminate Mother's parental rights?

Mother argues that § 41-3-607(1), MCA, which provides that a dispositional hearing on termination of parental rights be held within 180 days of the filing of the petition, mandates that a

**3**

petition be dismissed if a hearing is not held within the pre-scribed time. Here, the petition was filed May 24, 1989. The case was assigned to District Court Judge Barz. Thereafter, Judge Barz was appointed to the Montana Supreme Court. Judge Colberg was appointed as a judge to the Thirteenth Judicial District on November 13, 1989. On November 30, 1989, Judge Colberg scheduled a dispositional hearing in this matter for February 14, 1990. Thereafter, Mother moved for a continuance but reserved her rights to assert all defects arising due to the lapse of time period. This matter was then heard on March 20 and 21, 1990.

The 1985 Montana Legislature amended § 41-3-607(1), MCA, as shown by the underlined portion which follows:

> The termination of a parent-child legal relationship shall be considered only after the filing of a petition pursuant to 41-3-401 alleging the factual grounds for termination. Termination of a parent-child legal relationship shall be considered at a dispositional hearing held pursuant to 41-3-406, following or together with an adjudicatory hearing held pursuant to 41-3-404, within 180 days after the filing of the petition.

See, 1985 Mont. Laws, Ch. 388. The Legislature's intent was to give added protection to children who are the subjects of abuse, neglect, and dependency by encouraging those cases to be handled in a reasonably prompt manner. Nothing in the legislative history of this amendment suggests that the Legislature intended that an action be dismissed when a dispositional hearing is not held within the 180-day time frame or that the amendment was intended to

4

provide a statute of limitation protection for the parents of children who are alleged to be abused, neglected, or dependent.

Mother further argues that the word **"shall"** in this statute mandates dismissal of this action if the 180-day time limitation is not met. While the word "shall" in a statute is oftentimes mandatory, other factors must be considered to determine a statute's mandatory or directive effect when a time limitation is involved.

In State v. Nelson (Kan. **1968)**, **436** P.2d **885,** <u>cert. denied</u>, **392 U.S. 915,** the court considered a similar challenge to a court's jurisdiction, wherein a criminal defendant sought discharge from incarceration when the court did not impose sentence within five days of the court's denial of his motion for a new trial. The court held:

> Provisions intended to secure order, system and dispatch in the mode of proceeding by public officials, and by a disregard of which parties cannot be injuriously affect-ed, are not regarded as mandatory unless accompanied by negative words importing the acts required shall not be done in any other manner or time than that designated. [Citations omitted.]

<u>Nelson</u>, **436** P.2d at **887.**

The same reasoning was enunciated in Wyoming State Treasurer v. City of Casper (Wyo. **1976)**, **551** P.2d **687,** wherein the court held:

> It is a universal holding that a statute specifying a time within which a public officer is to perform an official act regarding the rights and duties of others is directory, unless the nature of the act to be performed, or the phraseology of the statute is such that the

5

> designation of time must be considered as a limitation of the power of the officer. [Citations omitted.]
>
> . . . .
>
> Another aid to construction is in the rule that an affirmative statutory provision relating to the time of performing official acts, unlimited or unqualified by negative words, is generally considered as directory rather than mandatory. [Citations omitted.]

City of Casper, 551 P.2d at 698-99.

In Wilson v. Brodie (1966), 148 Mont. 235, 419 P.2d 306, this Court considered whether a justice court lost jurisdiction to enter sentence when the sentencing did not meet the statutory requirement that it occur "not more than two days nor less than six hours after the verdict is rendered.'' Although deciding the case on other grounds, this Court stated:

> Even if the sentencing, arguendo, was imposed irregularly it is still valid for the purpose of determining whether the justice was acting within his jurisdiction. It is merely a procedural irregularity which cannot be raised for the purpose of attacking the jurisdiction of the justice court. [Citations omitted.] The statute is directory rather than mandatory or jurisdictional.

Wilson v. Brodie, 148 Mont. at 239, 419 P.2d at 309. Accordingly, we hold that § 41-3-607(1), MCA, is directory and therefore, the District Court did not lack jurisdiction to terminate Mother's parental rights based on the 180-day time limitation.


2. Did the District Court abuse its discretion in denying Mother's motion to dismiss?

6

Mother argues that because the dispositional hearing was not held within 180 days of the filing of the petition, the evidence presented at the dispositional hearing was stale and not based upon Mother's current situation. Following a review of the record, we hold that nothing about the delay in the hearing caused prejudice to Mother. The record indicates that 1) Mother has been seriously mentally ill for years, 2) five years of treatment plans and other agency involvement to help Mother with parenting skills have proven unsuccessful, and 3) Mother's condition and conduct are unlikely to change in the future. We therefore hold that the District Court did not abuse its discretion when it denied Mother's motion to dismiss.

3. Were the District Court's findings of fact, conclusions of law, and the judgment supported by substantial credible evidence?

Section 41-3-609, MCA (1989), sets forth the criteria the District Court was to follow for terminating Mother's parental rights:

> (1) The court may order a termination of the parent-child legal relationship upon a finding that the circumstances contained in subsection (1)(a), (1)(b), or (1)(c), as follows, exist:
>
> . . .
>
> (c) the child is an adjudicated youth in need of care and both of the following exist:
>
> (i) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful: and

7

(ii)  the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time.

(2)  In determining whether the conduct or condition of the parents is unlikely to change within a reasonable time, the court must enter a finding that continuation of the parent-child legal relationship will likely result in continued abuse or neglect or that the conduct or the condition of the parents renders the parents unfit, unable, or unwilling to give the child adequate parental care.  In making such determinations, the court shall consider but is not limited to the following:

(a)  emotional illness, mental illness, or mental deficiency of the parent of such duration or nature as to render the parent unlikely to care for the ongoing physical, mental, and emotional needs of the child within a reasonable time;

. . .

(g)  any reasonable efforts by protective service agencies that have been unable to rehabilitate the parent.

Mother argues that the record does not support by substantial credible evidence the statutory criteria of § 41-3-609, MCA (1989). She argues that the record merely proves that Mother is uncooperative and argumentative.  We disagree.

The record indicates that the children were adjudicated to be youths in need of care.  Ten witnesses, including health care professionals, social workers, a home attendant, a child care volunteer, a friend of Mother's, and a neighbor gave testimony relating to  1) several unsuccessful attempts to assist Mother with developing parenting skills through treatment plans and agency involvement and 2) Mother's ongoing inability to provide adequate parenting skills for her children.  In particular, Dr. David

Carlson, a psychiatrist, testified that Mother suffers from chronic schizophrenia, undifferentiated type, and a borderline personality disorder, mental illnesses of such duration or nature as to render her unlikely to be able to care for the ongoing physical, mental, and emotional needs of her children within a reasonable time. Based on this clear and convincing testimony, we hold that the District Court's findings of fact, conclusions of law, and judgment are supported by clear and convincing evidence.

In conclusion, we affirm the District Court's findings of fact, conclusions of law and judgment terminating Mother's parental rights to A.N.S. and L.M.R.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

9

IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 91-168

---

IN THE MATTER OF A.N.S.,　　　　　　　)
and L.M.R., Youths　　　　　　　　　　)　　O R D E R
in Need of Care.　　　　　　　　　　　)

---

The Opinion of this Court in the above-entitled matter, decided March **24, 1992,** is hereby amended as follows:

On page **2,** paragraph **5,** the statement of the third issue is amended to read:

> **3.** Were the District Court's findings of fact, conclusions of law, and the judgment supported by clear and convincing evidence?

On page 7, paragraph 2, the statement of the third issue is amended to read:

> **3.** Were the District Court's findings of fact, conclusions of law, and the judgment supported by clear and convincing evidence?

On page 8, paragraph 6, the first sentence is amended to read:

> Mother argues that the record does not support by clear and convicing evidence the statutory criteria of **§ 41-3-609,** MCA **(1989).**

DATED this 26th day of March, **1992.**

_____
Chief Justice

_____

_____

_____

_____
Justices

FILED

MAR 26 1992